UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZIMMCOR (1993) INC.,

                       **Plaintiff,**

   vs.                                        1:10-cv-1160
                                                 (MAD/DRH)

PERMASTEELISA NORTH AMERICA CORP.,

                       **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOX & KOWALEWSKI, LLP<br>4 Old Route 146<br>Clifton Park, New York 12065<br>Attorneys for Plaintiff | EDWARD KOWALEWSKI, JR., ESQ.<br>BRENDAN R. WOLF, ESQ. |
| MCNAMEE, LOCHNER, TITUS &<br>WILLIAMS, P.C.<br>677 Broadway<br>Albany, New York 12207-2503<br>Attorneys for Defendant Permasteelisa | KEVIN LAURILLIARD, ESQ.<br>MICHAEL J. HALL, ESQ. |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On September 28, 2010, Plaintiff commenced the instant breach of contract action. *See* Dkt. No. 1. On December 16, 2010, Defendant Permasteelisa North America Corp. ("Permasteelisa") filed its answer and a counterclaim against Plaintiff. *See* Dkt. No. 5. On December 30, 2010, Defendant Permasteelisa filed a third-party complaint against Turner Construction Company ("Turner"). *See* Dkt. No. 6.[1]

---

[1] On March 23, 2012, the parties submitted a stipulation of dismissal, voluntarily dismissing Turner from this action.

Currently before the Court is Defendant Permasteelisa's motion for summary judgment as to Plaintiff's first cause of action. *See* Dkt. No. 21.

## II. BACKGROUND

**A.     The parties and relevant background information**

This lawsuit arises out of a construction project at the campus of Rensselaer Polytechnic Institute ("RPI"), in Troy, New York, for the construction of the Experimental Media Performing Arts Center (hereinafter the "Project"). On or about July 30, 2004, RPI entered into a contract with Turner, whereby Turner was to serve as the construction manager for the Project (the "Primary Contract").

Turner entered into a subcontract with Josef Gartner USA ("Gartner") – a division of Defendant Permasteelisa – whereby Gartner was to perform a portion of the work at the Project for Turner (hereinafter the "Primary Subcontract"). On June 21, 2005, Plaintiff and Defendant Permasteelisa, through Gartner, executed a "Secondary Subcontract." *See* Dkt. No. 21-10. Pursuant to the Secondary Subcontract, Plaintiff was to perform the design, procurement, fabrication, assembly, testing, supply, distribution, erection and installation of a portion of the "Curtain Wall System" that Defendant Permasteelisa had subcontracted with Turner to construct.

After execution of the Secondary Subcontract, Plaintiff's Vice President, Akiva Markus, served as Plaintiff's project manager for the Project. As Plaintiff's project manager, Mr. Markus was responsible for overseeing the management of Plaintiff's work, including the design of the curtain walls, the manufacturing of the components at Plaintiff's facility, the delivery of the

2

components to the Project site, installation at the Project site, and payment from Gartner for the work performed. *See* Dkt. No. 28-9 at 4.[2]

As part of monitoring the work performed, Mr. Markus determined if the work that was performed or proposed to be performed by Plaintiff was additional or extra work beyond what Plaintiff was required to perform under the Secondary Subcontract. *See id.* When extra or additional work was required, Mr. Markus would submit a request for a change order to Joseph Tizn of Gartner. *See id.* Mr. Markus and Mr. Tizn would then negotiate the work and its cost; and, if they were able to reach an agreement, Mr. Tizn would prepare a change order using Turner's Subcontract Change Order form.

Between March 27, 2006, and continuing through March 9, 2011, Mr. Tizn prepared and issued thirty-two Subcontract Change Orders. *See* Dkt. No. 28-1 at 1.[3] With the exception of Subcontract Change Order No. 15, all of the Subcontract Change Orders use Turner's form, which sets forth a description of the extra or additional work to be performed or the work to be deleted from the Secondary Subcontract and the cost thereof to be added to or deducted from the Secondary Subcontract price. *See generally* Dkt. No. 28-1.

B.   **Applicable contract provisions**

The Secondary Subcontract incorporates by reference the provisions of the Primary Subcontract. The Secondary Subcontract provides as follows: "The intention of this Secondary Sub Contract is to pass down relevant obligations and entitlements from the Primary Subcontract

---

[2] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

[3] Plaintiff notes that they were unable to locate Subcontract Change Order No. 21. *See* Dkt. No. 28-9.

3

into the Secondary Sub Contract[.]" *See* Dkt. No. 21-10 at 2. The Secondary Subcontract also provides, in relevant part, that "[t]he terms and conditions of the Primary Subcontract as defined and listed in Appendix B, together with any other documents listed in Appendix B, are deemed to be incorporated into and form part of this Secondary Sub Contract. The Secondary Sub Contract shall consist of this document together with any documents listed in Appendix B." *See id.* at 4.

Appendix B to the Secondary Subcontract lists, among other documents, the Primary Subcontract. *See id.* at 7. Article V of the Primary Subcontract provides as follows:

> Should the Subcontractor be delayed, obstructed, hindered or interfered with in the commencement, prosecution or completion of the Work by any cause including but not limited to any act, omission, neglect, negligence or default of Turner or of anyone employed by Turner or by any other contractor or subcontractor on the Project, or by the Architect, the Owner or their contractors, subcontractors, agents or consultants, or by damage caused by fire or other casualty or by the combined action of workers or by governmental directive or order in no wise chargeable to the Subcontractor, or by any extraordinary conditions arising out of war or government regulations, or by any other cause beyond the control of and not due to default, neglect, act or omission of the Subcontractor, its officers, agents, employees, subcontractors or suppliers, then except where the General Contract has specific requirements at variance with the foregoing, in which case the requirements of the General Contract shall govern the Subcontractor shall be entitled to an extension of time for a period equivalent to the time lost by reason of any and all of the aforesaid causes[.]
>
> * * * * * * * * *
>
> The Subcontractor agrees that it shall not be entitled to nor claim any cost reimbursement, compensation or damages for any delay, obstruction, hindrance or interference to the Work except to the extent that Turner has actually recovered corresponding cost reimbursement, compensation or damage from the Owner under the Contract Documents for such delay, obstruction, hindrance or interference, and then only to the extent of the amount, if any, which Turner on behalf of the Subcontractor, actually received from the Owner on account of such delay, obstruction, hindrance or interference.

> It shall be an express condition precedent to any obligation on the part of Turner to make payment of any such cost, reimbursement, compensation or damages to the Subcontractor hereunder that Turner shall first be determined to be entitled to such compensation on behalf of the Subcontractor and then receive such payment from Owner, and Subcontractor expressly acknowledges that Turner is not obligated or required to pursue Subcontractor claims as against Owner if Turner, in its sole discretion, after review of the Subcontractor's claim, has deemed the claim to lack merit in whole or in part.
>
> Notwithstanding anything to the contrary above or in this Agreement, in the event that Turner is solely responsible for delay, obstruction, hindrance, interference or disruption to Subcontractor and Turner does not receive payment for the same, Turner shall be obligated to pay the Subcontractor for its increased costs of performance, such extended overhead and increased performance costs resulting from the delays, obstruction, hindrance, interference or disruption solely attributable to Turner.  Turner's liability hereunder will not include home office overhead, liquidated damages, attorneys fees and related costs.

*See* Dkt. No. 21-9 at 3.

In addition to the above provisions, Defendant Turner's Subcontract Change Orders contained the following language:

> Through acceptance of this Change Order, this Subcontractor acknowledges that it has reviewed the progress of the Work related to this Project and the potential impact of the additional work on the progress of the project in the future.  As a result, this Change Order includes compensation to the Subcontractor for any and all effects, delays, and inefficiencies or similar demands associated with this Project and the Subcontractor recognizes that there is no basis for any such claim in the future.

*See* Dkt. No. Dkt. No. 28 at ¶ 28.[4]

---

[4] Plaintiff contends that "Mr. Markus determined that the meaning of the second sentence, when read in conjunction with the first sentence, was that compensation for any and all claims for delays and/or inefficiencies related solely to the additional work were included in the Subcontract Change Order, that such claims would be waived by executing the Subcontract Change Order, and that claims for delays and/or inefficiencies not related to the additional work would not be

(continued...)

## C.     The parties' contentions

In its complaint, in its first claim, Plaintiff contends that its work was "unreasonably delayed, interfered with and impeded by the acts and omissions of Josef Gartner[.]"  *See* Dkt. No. 1 at ¶ 15.  These acts and omissions include Defendant Permasteelisa/Gartner's (1) "[f]ailure to provide clear architectural design;" (2) "[f]ailure to approve design and engineering plans in a timely manner;" (3) "[f]ailure to provide information required to resolve and/or resolve discrepancies between architectural plans and structural plans;" (4) "[f]ailure to approve shop drawings in a timely manner;" (5) "[f]ailure to address requests for information and/or change orders in a timely manner;" (6) "[f]ailure to provide sufficient control lines, bench marks and as-builts of concrete and steel;" (7) "[c]hange in panel installation sequence;" (8) "[f]ailure to provide structure and site access in a timely manner;" (9) "[f]ailure to provide missing structural members in a timely manner;" (10) "[f]ailure to resolve glazed louver issue in a timely manner;" (11) "[f]ailure to provide access to the Project site such that layout work and panel installation could be performed in a continuous and uninterrupted [manner];" (12) "[d]irecting timing of ordering glass and aluminum deliveries to plaintiff's manufacturing facility;" and (13) "[d]irecting timing of plaintiff's manufacturing of glass panels."  *See id.*

In its motion for summary judgment as to Plaintiff's first cause of action, Defendant Permasteelisa states that, in Plaintiff's Delay Claim dated February 20, 2009, Plaintiff attributes delay to Defendant Permasteelisa, Defendant Turner, the Project's architect, and Patriot Glass – Plaintiff's subcontractor. *See* Dkt. No. 21-13 at 7.  As such, Defendant Permasteelisa alleges that "Plaintiff's claim acknowledges that there were multiple causes for the delay and that Defendant

---

[4](...continued)
waived."  *See* Dkt. No. 28-9 at 6 (emphasis in original).  Defendant Permasteelisa, however, claims otherwise.

was not the sole cause of the delay." *See id.* Specifically, Defendant Permasteelisa claims that Article V of the Primary Subcontract, which it claims is incorporated by reference into the Second Subcontract, provides only for an extension of time and does not provide for money damages when there are multiple causes for the delay. *See id.* Further, Defendant Permasteelisa claims that the language contained in the Subcontract Change Orders waives Plaintiff's damages for delay claim.

### III. DISCUSSION

**A.     Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the

7

court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

B.  **Defendant Permasteelisa's claim that Plaintiff waived its right to delay damages when it signed a change order containing waiver language**

In its motion for summary judgment, Defendant Permasteelisa claims that Plaintiff waived its right to delay damages when it signed Change Order A-30 on November 2, 2007. *See* Dkt. No. 21-13 at 8. Defendant Permasteelisa states that Change Order A-30 contains the following language, which waived any of Plaintiff's future claims for compensation on account of delay: "'Through acceptance of this Change Order, this Subcontractor acknowledges that it has reviewed the progress of the Work related to this Project and the potential impact of the additional work on the progress of the project in the future. As a result, this Change Order includes compensation to the Subcontractor for any and all effects, delays, insufficiencies or similar demands associated with this Project and the Subcontractor recognizes that there is no basis for any such claim in the future.'" *See id.* (quoting Exhibit "D" to Tizn Affidavit). Defendant Permasteelisa alleges that the Second Circuit in *Mafco Elec. Contractors v. Turner Construction Co.*, 357 Fed. Appx. 395 (2d Cir. 2009), reviewed change order language identical to the language in Change Order A-30 and found that "'[t]he language of these provisions unambiguously relieves Turner of liability for the alleged delays.'" *See id.* (quotation omitted).

Plaintiff, however, contends that the language of the Change Order waiver is susceptible to differing interpretations; and, therefore, the Court may examine parol evidence to determine the parties' intent and that the parties intended the Change Order waiver to relate solely to the

additional work included in that particular Change Order. *See* Dkt. No. 28-9 at 11-13. Further, Plaintiff claims that Defendant Permasteelisa's project manager confirmed this understanding and that Defendant Permasteelisa is now estopped from enforcing this waiver language. *See id.* at 13. Finally, Plaintiff claims that "to read the waiver language to mean that the execution of a Subcontract Change Order would result in the waiver of any and all claims for delays or inefficiencies related to the entire Project is absurd from a practical perspective in that it would prevent the subcontractor from executing any Subcontract Change Order during the course of a project until all claims for delays or inefficiency were resolved." *See id.* at 13-14.

Under New York law, a plaintiff alleging a breach of contract claim must establish the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 82 A.D.3d 1188, 1189 (2d Dep't 2011) (citations omitted).

"In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use." *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (citing *Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (1985)). "When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." *Id.* (citations omitted). "Where the language used is susceptible

to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate . . . since it is only when there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Id.*

The Second Circuit has "defined ambiguous language as that which is '"capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."'" *Id.* (quotations omitted). "Conversely, language is not ambiguous when it has '"a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion."'" *Id.* (quotations omitted). "Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties' intended a meaning different than that expressed in the agreement and, therefore, extrinsic evidence 'may be considered only if the agreement is ambiguous.'" *Brad H. v. City of New York*, 17 N.Y.3d 180, 186 (2011) (quotation and other citations omitted).

In *Mafco Elec. Contractors v. Turner Construction Co.*, 357 Fed. Appx. 395 (2d Cir. 2009), the defendant hired the plaintiff as an electrical subcontractor.[5] The plaintiff filed an action against the defendant to recover additional costs associated with delays in completing the contract. The defendant responded that the plaintiff was precluded from seeking such costs under the contract's no damage for delay clause and filed a motion for summary judgment. The plaintiff

---

[5] The Court notes that *Mafco Elec. Contractors* was decided pursuant to Connecticut law.

argued that the costs it incurred were covered by exceptions to the clause. The court granted the defendant's motion, noting that the plaintiff had waived any claims it might have had for the delay costs, whether an exception applied or not, by signing change orders that contained language that relinquished such rights. *See id.* at 397. Specifically, the Second Circuit held that "MAFCO's claim is foreclosed by a series of clear, unconditional release and waiver forms signed by MAFCO during the course of the project." *Id.* (footnote and citation omitted). The more than two dozen change orders that the plaintiff signed contained the following language:

> Through acceptance of this Change Order, this Subcontractor acknowledges that it has reviewed the progress of the work related to this Project and the potential impact of the additional work on the progress of the project in the future. As a result, this Change Order includes compensation to the Subcontractor for any and all effects, delays, inefficiencies or similar demands associated with this Project and the Subcontractor recognizes that there is no basis for any such claim in the future.

*Id.* Based on this, the court held that "[t]he language of these provisions unambiguously relieves Turner of liability for the alleged delays." *Id.* (citation omitted).

In the present matter, all Subcontract Change Orders, with the exception of Subcontract Change Order No. 15, use Turner's form. *See* Dkt. No. 28 at ¶ 26. All of the Subcontract Change Orders, with the exception of Subcontract Change Order No. 15, include the following language:

> Through acceptance of this Change Order, this Subcontractor acknowledges that it has reviewed the progress of the Work related to this Project and the potential impact of the additional work on the progress of the project in the future. As a result, this Change Order includes compensation to the Subcontractor for any and all effects, delays, inefficiencies or similar demands associated with this Project and the Subcontractor recognizes that there is no basis for any such claim in the future.

*See id.* at ¶ 28. From March 27, 2006 through March 9, 2011, Plaintiff executed over thirty Subcontract Change Orders containing this unambiguous language. *See* Dkt. No. 28-1. These

11

Subcontract Change Orders were submitted during the time which Plaintiff seeks damages for Defendant Permasteelisa's alleged delays.

Contrary to Plaintiff's contentions, and as the Second Circuit made clear, the waiver language, contained in all but one of the Subcontract Change Orders, is unambiguous. *See Mafco Elec. Contractors*, 357 Fed. Appx. at 397. To the extent that Plaintiff attempts to rely on evidence outside of the four corners of the Subcontract Change Order to create ambiguity, its arguments are precluded by the parol evidence rule. *See Brad H.*, 17 N.Y.3d at 186.

Moreover, Plaintiff argues that Defendant Permasteelisa should be equitably estopped from enforcing the waiver language because Gartner's project manager, Joseph Tizn, spoke with Plaintiff's project manager, Mr. Markus, and Mr. Tizn confirmed Mr. Markus' belief that the waiver language waived claims for compensation on account of delays <u>solely</u> with respect to the additional work set forth in the Subcontract Change Order. *See* Dkt. No. 28-9 at 11-13. This argument, however, is merely an attempt to circumvent the parol evidence rule by invoking the term "equitable estoppel," and, therefore, must fail. *See Royal Mortgage Corp. v. Federal Deposit Ins. Corp.*, 20 F. Supp. 2d 664, 669-70 (S.D.N.Y. 1998) (holding that "[c]ourts in New York have rejected similar efforts to circumvent the parol evidence rule by claiming estoppel" (citations omitted)). As in *Royal Mortgage Corp.*, "the equitable estoppel argument forwarded by [P]laintiff in this case goes to the heart of what the agreement between the parties was, and fails for that reason." *Id.* at 670 (citations omitted).[6]

---

[6] Moreover, the Court notes that nothing in the record indicates that Plaintiff was deliberately deceived by Defendant Permasteelisa or Mr. Tizn, a required element of an equitable estoppel claim under New York law. *See General Electric Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994) (stating the elements of equitable estoppel under New York law) (citation omitted).

Based on the foregoing, the Court grants Defendant Permasteelisa's motion for partial summary judgment and dismisses Plaintiff's first claim.  In light of this, the Court will not reach the merits of Defendant Permasteelisa's argument that Plaintiff's first cause of action is barred by the "no damage for delay" clause of the Contract.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Permasteelisa's motion for summary judgment as to Plaintiff's first cause of action is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 30, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge