UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZIMMCOR (1993) INC.,

                         **Plaintiff,**

   vs.                                       1:10-cv-1160
                                              (MAD/DRH)

PERMASTEELISA NORTH AMERICA CORP.,

                         **Defendant.**
_____

APPEARANCES:                             OF COUNSEL:

**FOX & KOWALEWSKI, LLP**               **EDWARD KOWALEWSKI, JR., ESQ.**
4 Old Route 146                                 **BRENDAN R. WOLF, ESQ.**
Clifton Park, New York 12065
Attorneys for Plaintiff

**MCNAMEE, LOCHNER, TITUS &**         **KEVIN LAURILLIARD, ESQ.**
**WILLIAMS, P.C.**                                **MICHAEL J. HALL, ESQ.**
677 Broadway
Albany, New York 12207-2503
Attorneys for Defendant Permasteelisa

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Plaintiff's motion *in limine* seeking the following relief: (1) an order precluding Defendant from introducing at trial all evidence related to the provisions in the Primary Subcontract between Defendant and Turner Construction Company ("Turner"), which are referenced in the Secondary Subcontract between Plaintiff and Defendant, other than those which relate to the scope, quality, character or manner of Plaintiff's work; and (2) an order precluding Defendant from introducing at trial a letter agreement between Plaintiff and Defendant entered into on or about May 27, 2008, on account of a provision therein which provides that the

agreement would not be disclosed by the parties without their mutual consent, unless required by process of law. *See* Dkt. No. 39-6 at 3.

## II. BACKGROUND

This lawsuit arises out of a construction project at the campus of Rensselaer Polytechnic Institute ("RPI"), in Troy, New York, for the construction of the Experimental Media Performing Arts Center (hereinafter the "Project"). On or about July 30, 2004, RPI entered into a contract with Turner, whereby Turner was to serve as the construction manager for the Project (the "Primary Contract").

Turner entered into a subcontract with Josef Gartner USA ("Gartner") – Defendant's predecessor in interest – whereby it was to perform a portion of the work at the Project for Turner (hereinafter the "Primary Subcontract").[1] On June 21, 2005, Plaintiff and Defendant, through Gartner, executed a "Secondary Subcontract." Pursuant to the Secondary Subcontract, Plaintiff was to perform the design, procurement, fabrication, assembly, testing, supply, distribution, erection and installation of a portion of the "Curtain Wall System" that Defendant had subcontracted with Turner to construct.

After execution of the Secondary Subcontract, Plaintiff's Vice President, Akiva Markus, served as Plaintiff's project manager for the Project. As Plaintiff's project manager, Mr. Markus was responsible for overseeing the management of Plaintiff's work, including the design of the curtain walls, the manufacturing of the components at Plaintiff's facility, the delivery of the

---

[1] To avoid confusion, since Gartner is the predecessor in interest to Defendant, the Court will treat them as one entity and will refer to them simply as "Defendant."

components to the Project site, installation at the Project site, and payment from Defendant for the work performed.

During the course of Plaintiff's performance of its work under the Secondary Subcontract, Plaintiff entered into a subcontract with Patriot Glass & Mirror, Ltd. ("Patriot"), under which Patriot agreed to furnish labor to Plaintiff necessary for Plaintiff to complete its work under the Secondary Subcontract. On July 19, 2007, Patriot requested Plaintiff's assistance in obtaining laborers from Defendant to supplement Patriot's workforce. In response, Mr. Markus forwarded Patriot's email to Defendant's project manager, Joseph Tizn, and suggested that Patriot contact Mr. Tizn directly.

Thereafter, Patriot and Defendant entered into an agreement whereby laborers on Defendant's payroll worked under Patriot's direction to perform Patriot's work. Plaintiff was not a party to the agreement between Defendant and Patriot. When Patriot refused to pay Defendant for the cost of the laborers that Defendant provided, Defendant sought payment from Plaintiff in the form of a backcharge against the amount owed from Defendant to Plaintiff under the Secondary Subcontract. On May 27, 2008, Plaintiff and Defendant entered into a letter agreement regarding Defendant's assessment of the alleged backcharge. The letter agreement provided that it would not be disclosed by the parties without their mutual consent, unless required by process of law.

### III. DISCUSSION

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential

grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**A.     Incorporation by reference**

Plaintiff asserts that incorporation clauses in construction subcontracts only bind the subcontractor to the provisions of the prime contract which relate to "'the scope, quality, character and manner of the subcontractor's work'" and that "'unrelated prime contract provisions such as a "dispute" clause governing the resolution of monetary claims between the project owner and general contractor are not incorporated by reference into a subcontract.'" *See* Dkt. No. 39-6 at 7 (quotation and other citations omitted). As such, Plaintiff claims that Defendant should be precluded from introducing all provisions of the Primary Subcontract, other than those which relate to scope, quality, character or manner of Plaintiff's work. *See id.* Defendant argues, however, that the Court should deny the motion because this issue was already decided in the Court's March 30, 2012 Memorandum-Decision and Order. *See* Dkt. No. 53-5 at 4 (citation omitted). Moreover, Defendant asserts that the Secondary Subcontract specifically identifies certain terms and provisions of the Primary Subcontract and is therefore sufficiently particular to incorporate these provisions by reference. *See id.* at 5-6.

4

"Generally, clauses which seek to bind a subcontractor to the terms of a prime contract through incorporation by reference only bind the subcontractor to provisions relating to the 'scope, quality, character and manner of the work to be performed by the subcontractor.'" *Dart Mechanical Corp. v. XL Specialty Ins.*, 593 F. Supp. 2d 464, 470 (E.D.N.Y. 2008) (citing *Bussanich v. 310 E. 55th St. Tenants*, 723 N.Y.S.2d 444, 445, 282 A.D.2d 243, 244 (1st Dep't 2001)). "By no means can it be said, though, that other terms in a prime contract can never be incorporated into a subcontract by reference." *Id.* "New York construction contract law merely holds that other kinds of provisions cannot be incorporated with standard, blanket incorporation language." *Id.* (citing *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1008 fn.5 (2d Cir. 1991) (noting that a clause barring damages for delay may be incorporated into a subcontract when the incorporation is express and unambiguous)).

Clause 7 of the Secondary Subcontract provides as follows:

> The terms and conditions of the Primary Sub Contract as defined
> and listed in Appendix B, together with any other documents listed
> in Appendix B, are deemed to be incorporated into and to form part
> of this Secondary Sub Contract.  The Secondary Sub Contract shall
> consist of this document together with any documents listed in
> Appendix B.  In the event of any conflict the express provisions of
> this Secondary Sub Contract documents shall prevail.

*See* Dkt. No. 39-3 at 4.  Appendix B of the Secondary Subcontract specifically lists, among other documents, "Josef Gartner USA/Turner Contract Special provisions for all Subcontractors dated June 23rd 2004 (no of pages 26)." *See id.* at 7.  Paragraph 13(m) of the "Changes in the Work" section of the Special Provisions for all Subcontractors provides that, "[e]xcept in an emergency endangering life or property, the Subcontractor shall make no changes in the work affecting the

5

original contract sum or contract time unless in pursuance of a change order or other written order from Turner Construction Company." *See* Dkt. No. 39-2 at 54.[2]

Contrary to Defendant's assertions, the above language from the Special Provisions for all Subcontractors is not incorporated by reference into the Secondary Subcontract. As Defendant correctly notes, the document entitled Special Provisions for all Subcontractors is listed in Appendix B of the Secondary Subcontract, and it provides the date that the document was created and the number of pages in the document. *See* Dkt. No. 39-3 at 7.[3] Such information, however, does not provide the specificity required to bind Plaintiff.

In *Dart Mechanical Corp.*, a case relied upon by Defendant, the court found that a dispute resolution clause in the general contract was binding on the plaintiff-subcontractor. *See Dart Mechanical Corp.*, 593 F. Supp. 2d at 470. In that case, the subcontracts specifically referenced the specific provision of the general contract that was to be followed if a dispute arose. *See id.* Specifically, the court noted that "the clause in each Subcontract states unequivocally that the Subcontractor agreed to accept 'the results of such determination of said claims or disputes pursuant to said Article 8.03, and related provisions of Chapter 8 of [the General Contract].'" *Id.* As such, the court held that, "in light of such unequivocal language, it is no stretch at all to conclude that the parties agreed contractually that Article 8.03 and its related provisions in Chapter 8 of the General Contract were to be expressly incorporated in the Subcontract." *Id.*

---

[2] In its motion *in limine*, Plaintiff does not identify what provisions of the Primary Subcontract it is seeking to preclude Defendant from introducing at trial. Defendant, however, has identified this provision as one it intends to enforce against Plaintiff. *See* Dkt. No. 53-5 at 5-6.

[3] Appendix B lists a total of eleven (11) documents that Defendant contends are incorporated by reference into the Secondary Subcontract. *See* Dkt. No. 39-3 at 7.

6

In the present matter, unlike *Dart Mechanical Corp.*, Clause 7 of the Secondary Subcontract and Appendix B simply provide a laundry list of documents by which Plaintiff is to be bound; they do not specifically identify paragraph 13(m) of the document entitled Special Provisions for all Subcontractors.  In light of the fact that paragraph 13(m) is a documentation requirement not related to the "scope, quality, character and manner of the work," *Beys General Constr. Corp. v. Hill International, Inc.*, 92 A.D.3d 407, 407 (1st Dept. 2012) (citation omitted), incorporation needed to be "express and unambiguous" to bind Plaintiff.  *See Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1008 n.5 (2d Cir. 1991) (citation omitted).

Based on the foregoing, the Court grants Plaintiff's motion *in limine* insofar as it seeks an order precluding Defendant from introducing at trial evidence relating to paragraph 13(m) of the "Changes in the Work" section of the document entitled Special Provisions for all Subcontractors. In light of the fact that Plaintiff failed to identify any additional language it seeks to preclude through this motion, the Court finds that it is inappropriate at this time to preclude Defendant from introducing at trial all evidence related to the provisions in the Primary Subcontract, other than those which relate to the scope, quality, character or manner of Plaintiff's work.[4]

---

[4] As Defendant points out, in its March 30, 2012 Memorandum-Decision and Order, the Court stated that "[t]he Secondary Subcontract incorporates by reference the provisions of the Primary Subcontract." *See* Dkt. No. 37 at 3.  This language, however, was simply provided as background, not a legal conclusion, in order to assist the reader in fully understanding the parties' relationships and the claims at issue.  As the discussion in the Court's March 30, 2012 Memorandum-Decision and Order makes clear, the Court did not base its decision to grant Defendant's motion for partial summary judgment on the language contained in the Secondary or Primary Subcontracts, but on the waiver language contained in the Change Orders executed by the parties.  *See id.* at 11-13.  Therefore, even if this language could be considered a legal conclusion, it would clearly be dicta, since it was not necessary to the Court's decision.  As such, the law of the case doctrine is inapplicable to this statement.  *See May Dept. Stores Co. v. International Leasing Corp., Inc.*, No. 88 Civ. 4300, 1995 WL 656986, *2 (S.D.N.Y. Nov. 8, 1995) (citations omitted); *see also DiLaura v. Power Authority of State of N.Y.*, 982 F.2d 73, 76-77 (2d Cir. 1992) (citations omitted).

B.     **The letter agreement**

Plaintiff asserts that a letter agreement entered into by the parties in May of 2008, is a confidential document requiring mutual consent for disclosure, and is otherwise inadmissible pursuant to Rule 408 of the Federal Rules of Evidence. *See* Dkt. No. 39-6 at 8. Defendant claims that Rule 408 does not preclude the letter agreement because it "is not an offer to accept valuable consideration in compromising or attempting to compromise a claim between Plaintiff and Defendant. Rather, it is an agreement supported only by consideration given from Defendant to Plaintiff (in the form of temporary forbearance in the pursuit of Defendant's backcharge against Plaintiff) pursuant to which Defendant agreed to pursue collection of sums it was owed by Plaintiff from another source – Patriot's surety." *See* Dkt. No. 53-5 at 7.

Rule 408 generally prohibits the introduction of evidence regarding offers of compromise or settlement when the evidence is offered "to provide liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a). Evidence of an offer to compromise may be admissible under the Rule, however, if it is offered for another purpose. See Fed. R. Evid. 408(b). "In applying the 'another purpose' exception to Rule 408, 'the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) (quotation omitted).

In the present matter, Rule 408 clearly prohibits Defendant from introducing this letter agreement to the extent that Defendant is seeking to use it to establish Plaintiff's liability or the amount owed on its counterclaim. Defendant asserts that it "offers the letter agreement to establish that Plaintiff is estopped thereby from claiming that Defendant's backcharge claim for the labor provided to Patriot was waived or limited in any way." *See* Dkt. No. 53-5 at 8. Plaintiff,

8

however, has not asserted that Defendant's backcharge claim against it is in any way waived or limited. Although such a use may be "another purpose" permitted by Rule 408, the Court finds that it is premature to determine this at this point. As such, the Court will reserve decision on this part of Plaintiff's motion.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendant is prohibited from introducing at trial evidence relating to paragraph 13(m) of the "Changes in the Work" section of the document entitled Special Provisions for all Subcontractors; and the Court further

**ORDERS** that Defendant is prohibited from introducing the letter agreement to establish Plaintiff's liability or amount thereof. The Court reserves judgment as to whether Defendant may introduce the letter agreement for "another purpose" as contemplated in Rule 408; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 26, 2012
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge